UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAMES AZIZ MAKOWSKI,** ) <br> ) <br> Plaintiff, ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES OF AMERICA;** AND ) <br> DEPARTMENT OF HOMELAND SECURITY ) <br> (DHS), ) <br> ) <br> Defendants. ) <br> ) | CASE NO: 12-CV-5265 <br><br> **SECOND AMENDED COMPLAINT** |

### SECOND AMENDED COMPLAINT

### STATEMENT OF THE CASE

1. This complaint arises from unlawful actions taken by the Department of Homeland Security ("DHS" or "the Department") that caused James Aziz Makowski ("Plaintiff") to be wrongfully detained in a maximum (then medium) security prison facility for approximately 70 days, often being locked in a cell for 19 hours a day and repeatedly subjected to strip searches.

2. In particular, under the Privacy Act, DHS is required to maintain its records as to Plaintiff's immigration and citizenship status with "such accuracy, relevance, timeliness, and completeness" so as to "assure fairness in any determination" the Department makes in exercising its immigration enforcement authority in reliance on those records. *See* 5 U.S.C. §§ 552a(g)(1)(C) & (D), (e)(5). DHS's failure to maintain its records in accordance with its legal obligations under the Privacy Act resulted in Immigration and Custom Enforcement ("ICE") agents issuing an immigration detainer against Plaintiff on July 8, 2010, which resulted in his

unlawful detention for 70 days. Plaintiff seeks to hold DHS liable for the actual damages he has suffered due to the Department's violation of his rights under the Privacy Act, including lost wages and other pecuniary and economic harm. Plaintiff also seeks reasonable attorneys' fees and litigation costs for having to bring this action. 5 U.S.C. §§ 552a(g)(4)(A) & (B).

3. Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, Plaintiff further seeks to hold the United States liable for the damages he suffered because of the erroneous immigration detainer, which resulted in Plaintiff's false imprisonment in a prison facility for approximately 70 days. Due to DHS's and ICE's tortious conduct, Plaintiff suffered damages including loss of liberty, emotional pain and suffering, lost wages, and attorneys' fees and costs.

4. Finally, Plaintiff seeks to amend records in the custody or control of DHS that pertain to him in order to accurately and consistently reflect his U.S. citizenship. 5 U.S.C. §§ 552a(d)(3), (g)(1)(A). Plaintiff seeks reasonably attorney fees and other litigation costs for having to bring this claim, as permitted by statute. 5 U.S.C. § 552a(g)(2)(B).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

6. This Court has jurisdiction over Plaintiff's Privacy Act claims pursuant to 5 U.S.C. §§ 552a(g)(1), (g)(5).

7. This Court has jurisdiction over Plaintiff's FTCA claim pursuant to 28 U.S.C. § 1346(b).

8. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552a(g)(5) because Plaintiff resides in the district.

9. Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

10. Finally, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff resides in the district and the defendants are the United States and agencies of the United States.

**PARTIES**

11. Plaintiff, James Aziz Makowski, acquired U.S. citizenship at the age of one through his adoptive U.S. parents. Plaintiff entered the United States on an IR4 visa, which reflected that he was an orphan adopted by a U.S. citizen. The former Immigration and Naturalization Service ("INS"), now DHS, issued Plaintiff a certificate of his U.S. citizenship on March 6, 1989.

12. Defendant DHS is obligated to maintain its records with the requisite accuracy, relevance, timeliness, and completeness, particularly because over 44 percent of the foreign-born population in the United States are U.S. citizens and the Department's enforcement through immigration detainers has reached unprecedented heights with over 250,000 detainers issued each year.

13. Defendant the United States of America is responsible for harm caused by investigative or law enforcement officers resulting from false imprisonment by DHS and ICE agents acting within the scope of their employment, in accordance with the law of the state where the act or omission occurred. In this case, DHS and ICE acted tortiously when they caused Plaintiff to be wrongfully detained in a prison facility for approximately 70 days.

14. DHS and ICE employ investigative or law enforcement officers as defined by 28 U.S.C. §§ 2680(h).

## FACTUAL ALLEGATIONS

**A. Plaintiff's U.S. Citizenship and Government Records**

15. Plaintiff was born on July 8, 1987 in Calcutta, India. Plaintiff's U.S. citizen parents adopted him when he was one year old. Plaintiff entered the U.S. on an IR4 visa, which reflected that he was an orphan adopted by a U.S. citizen. *See* **Ex. A**. Soon after arrival, Plaintiff acquired U.S. citizenship through his parents. On March 6, 1989, the former INS, now DHS, issued Plaintiff a certificate of citizenship, which included his alien registration number. *See* **Ex. B.** Later that same year, Plaintiff's parents sought and obtained written verification from INS that Plaintiff was a U.S. citizen. *See* **Ex. C.** DHS had an obligation to maintain records showing that Plaintiff is a U.S. citizen.

16. Plaintiff has continuously lived in the United States since arriving as an infant. Plaintiff has had a U.S. passport since an early age and at all times relevant to this complaint had a current passport. *See* **Ex. D.** DHS has access to State Department records regarding issuance of U.S. passports.

17. While in high school, Plaintiff decided to join the U.S. Marines. As part of the Marine's application process, Plaintiff had to undergo an FBI background check. Based on information and belief, the FBI had record that Plaintiff was a U.S. citizen and continued to have record of his citizenship during all events relevant to this complaint. Plaintiff was accepted into the Marines in 2004, entered active duty on July 18, 2005, and was discharged in October 2006. DHS has access to FBI records regarding Plaintiff's status as a U.S. citizen.

4

18. On February 27, 2001, the Child Citizenship Act of 2000 ("CCA") (8 U.S.C. § 1431, INA § 320(a)) went in effect which, by operation of law, granted derivative U.S. citizenship to individuals such as the Plaintiff. Accordingly, even if Plaintiff's parents had not filed for his citizenship, based on his birth date and recorded IR4 visa, ICE should have determined on the face of its electronic records that Plaintiff automatically became a U.S. citizen as of the effective date of the CCA.

19. DHS's records pertaining to Plaintiff likely continue to not accurately and consistently reflect his U.S. citizenship. In late 2012, a potential employer sought to verify Plaintiff's citizenship using E-Verify, an electronic database managed by DHS and the Social Security Administration. The E-Verify system returned a Tentative Nonconfirmation response, meaning that Plaintiff's status as a U.S. citizen could not be verified. *See* **Ex. E**.

### B. DHS's Unlawful Arrests of Plaintiff

20. In October 2009, Plaintiff was arrested in DuPage County, Illinois. Even though Plaintiff is a U.S. citizen, ICE lodged an unlawful immigration detainer against him. *See* **Ex. F**. While Plaintiff's father posted bond, Plaintiff was told that he could not be released because of the immigration detainer.

21. Before issuing the 2009 immigration detainer, ICE did not interview Plaintiff or allow him to submit evidence that he was a U.S. citizen. ICE never provided Plaintiff with a copy of the detainer and did not inform Plaintiff that a detainer had issued until Plaintiff sought to be released on bond.

22. While in custody, Plaintiff spoke with someone by phone who Plaintiff believes was an ICE officer and explained that he was a U.S. citizen. Thereafter, the detainer was lifted,

5

and Plaintiff was eventually released on bail. The ICE officer took no action to correct DHS records regarding Plaintiff's citizenship.

23. On July 7, 2010, Plaintiff was arrested by law enforcement in DuPage County, Illinois.

24. On July 8, 2010, without ever interviewing Plaintiff, the ICE Chicago Field office issued an I-247 immigration detainer against Plaintiff to the DuPage County Jail. *See* **Ex. G.** The immigration detainer included Plaintiff's alien registration number but inaccurately listed his nationality as "India." INS and now DHS has not properly updated its records in over 20 years to accurately reflect that Plaintiff is a citizen of the United States.

25. Prior to issuing the immigration detainer, ICE did not conduct a reasonable investigation into Plaintiff's citizenship. ICE did not have probable cause to issue an immigration detainer against Plaintiff. Indeed, the immigration detainer that ICE issued against Plaintiff did not even purport that ICE had probable cause. The detainer states that DHS issued based on the mere fact that an "[i]nvestigation has been initiated" into whether Plaintiff was removable from the United States. Id. Yet, DHS instructed DuPage County Jail and any subsequent prison to treat the detainer like an arrest warrant. The detainer stated that federal law required DuPage County Jail to detain Plaintiff for 48-hours (excluding weekends and holidays) based solely on the immigration detainer. *Id.*

26. Had ICE reasonably investigated Plaintiff's case, it would have discovered Plaintiff's certificate of U.S. citizenship, U.S. passport, military records and/or social security number, among other evidence showing that Plaintiff is a U.S. citizen. Had ICE interviewed Plaintiff, Plaintiff would have confirmed his U.S. citizenship with his U.S. passport, Illinois

6

driver's license, and/or social security number. Similarly, had DHS and ICE maintained accurate records, those records would have reflected that Plaintiff is a U.S. citizen.

27. On December 6, 2010, Plaintiff pleaded guilty to a drug offense and received a sentence of seven years with a recommendation that Plaintiff participate in the Illinois Department of Corrections' ("IDOC") "impact incarceration" program. **Ex. H**. The IDOC "impact incarceration" program is a 120-day boot camp that would allow Plaintiff to be released on parole once he successfully completed the boot camp.

28. After sentencing, Plaintiff was transferred to the Stateville Correctional Center in Joliet, Illinois ("Stateville") for processing into boot camp. ICE stations agents at Stateville in order to identify removable immigrants processed into the IDOC system. ICE had knowledge that an immigration detainer would automatically disqualify Plaintiff from boot camp.

29. During processing, Plaintiff met with an ICE officer. The ICE officer asked Plaintiff where he was born. Plaintiff explained that he was born in India but was a U.S. citizen. Plaintiff provided the ICE officer with copies of his U.S. passport and social security card. The ICE officer inspected and copied these materials. Based on information and belief, the ICE agent was aware of Plaintiff's immigration detainer but did nothing to cancel it and did not correct ICE's records to reflect Plaintiff's status as a U.S. citizen.

30. Soon after processing, Plaintiff learned that he had been automatically disqualified from boot camp due to ICE's wrongful detainer. **Ex. I.** Instead of being transferred into boot camp, Plaintiff was transferred from Stateville to the maximum security Pontiac Correctional Center ("Pontiac") to serve prison time. Plaintiff suffered considerable emotional and psychological distress at the prospect of having to serve a seven-year prison sentence instead of the 120-day boot camp. He further suffered from anxiety and depression and, at times, ate

7

only one meal a day while detained at Pontiac. He was often locked in a cell for 19 hours a day and repeatedly subjected to strip searches.

31. Plaintiff remained at the maximum security Pontiac until late January 2011 without ICE taking any action on his U.S. citizenship claim.

32. In January 2011, Plaintiff's father sought assistance from an attorney, Michael Byrne, to cancel the wrongful immigration detainer on Plaintiff's behalf. Mr. Byrne first made phone calls to ICE headquarters in Chicago, but ICE refused to cancel the detainer. Mr. Byrne ultimately was required to go in person to ICE's Chicago office to convince ICE to cancel the detainer. ICE canceled Plaintiff's wrongful detainer on January 25, 2011. **Ex. J**. Once the ICE detainer was canceled, Plaintiff was transferred to the medium security Graham Correctional Center on February 9, 2011 for processing into boot camp.

33. Plaintiff successfully finished the 120-day boot camp without incident and was released on July 20, 2011. In September 2011, Plaintiff began working as a network administrator. Had the wrongful immigration detainer not been lodged against Plaintiff, he would have completed the 120-day boot camp and been released on parole by mid-May 2011. Upon release, Plaintiff would have sought gainful employment immediately and, but for the detainer, would have started working prior to September 2011.

C. **DHS's Violations of Plaintiff's Privacy Act Rights**

34. The Privacy Act requires that an agency, such as DHS and ICE, maintain its records on individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness in any determination relating to the . . . rights . . . [of an] individual that may be made on the basis of such record . . . ." 5 U.S.C. § 552a(g)(1)(C); *see* 5 U.S.C. § 552a(e)(5). On March 6, 1989, the former INS, now DHS, issued Plaintiff a certificate

8

of U.S. citizenship. Later that year, Plaintiff's parents sought and obtained from INS written verification of Plaintiff's status as a U.S. citizen. In February 2001, Plaintiff would have derived citizenship by operation of law under the CCA, like thousands of other adopted lawful permanent residents. In addition, Plaintiff informed an ICE officer of his status as a U.S. citizen in October 2009 and again in December 2010. ICE nonetheless issued an unlawful detainer against Plaintiff in July 2010 and maintained that unlawful detainer until January 25, 2011.

35. The Privacy Act does not permit DHS to exempt itself from its legal obligations under 5 U.S.C. §§ 552a(g)(1)(C), (e)(1) & (e)(5) or from any civil liabilities that may flow from DHS's violation of Plaintiff's rights under those subsections. *See* 5 U.S.C. §§ 552a(j) & (k).

36. DHS's failure to maintain their records in accordance with their legal obligations resulted in Plaintiff being held approximately 70 days in a prison facility due to a wrongful immigration detainer lodged against him. But for the violation, Plaintiff would have sought and gained employment earlier than he did upon being released from boot camp.

37. As a result of Defendants' violations of the Privacy Act, Plaintiff suffered lost wages and other pecuniary and economic harm.

38. DHS's records pertaining to Plaintiff likely continue to not accurately and consistently reflect his U.S. citizenship. In late 2012, a potential employer sought to verify Plaintiff's citizenship using E-Verify, an electronic database managed by DHS and the Social Security Administration. The E-Verify system returned a Tentative Nonconfirmation response, meaning that Plaintiff's status as a U.S. citizen could not be verified. *See* **Ex. E**.

39. In December 2012, Plaintiff sent DHS a request to amend its records to accurately reflect his U.S. citizenship. **Ex. K**; 5 U.S.C. § 552a(d)(2). While DHS sent a letter

acknowledging receipt of Plaintiff's request, it failed to otherwise respond to Plaintiff's request in violation of the Privacy Act. 5 U.S.C. § 552a(g)(1)(A). *See* **Ex. L.**

### D. Government's Violations of the Federal Tort Claims Act

40. Prior to exercising its immigration enforcement authority, DHS has had the longstanding threshold obligation to establish an individual is not a U.S. citizen. *See Woodby v. INS*, 385 U.S. 276 (1961); 8 C.F.R. § 1240.8(c); *Morales v. Chadbourne*, 2014 WL 554478, at *10 (D. R.I. Feb. 14, 2014) ("[I]t is clearly established 'that an ICE officer [does] not have the authority to detain or deport U.S. citizens.'") (quoting *Lyttle v. United States*, 867 F. Supp.2d 1256, 1281 (M.D. Ga. 2012)). A practical consequence of this legal obligation is that: "As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a [United States citizen]." **Ex. M**, Memorandum from John Morton, ICE Director, to Field Office Directors, Special Agents in Charge, and Chief Counsels, "Superseding Guidance on Reporting and Investigating Claims to United States Citizenship" (Nov. 19, 2009)) [hereinafter "Morton Memo"].

41. The Morton Memo and applicable law requires ICE agents to conduct a reasonable investigation into an individual's citizenship before issuing an immigration detainer that instructs for detention pursuant to the detainer. If an individual makes a claim of U.S. citizenship, the Morton Memo requires ICE agents to investigate that claim, report the claim up the chain of command, and instructs against arresting or detaining such individual if there is probative evidence of U.S. citizenship. *See id.*

42. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, permits private parties to sue the United States for torts committed by persons acting on behalf of the federal

government. Under the FTCA, the United States is liable for tort claims in the same manner and to the same extent as a private individual would be under the circumstances.

43. DHS falsely imprisoned Plaintiff by issuing an unlawful immigration detainer absent probable cause and causing Plaintiff to be detained in a prison facility when he would have otherwise have participated in a less restrictive boot camp and would have been released approximately 70 days earlier.

44. DHS knew or should have known that, as a result of its issuance and maintenance of an immigration detainer, Plaintiff would be, or it was substantially certain that Plaintiff would be, automatically disqualified from admission into boot camp and otherwise detained in a prison facility for the length of his seven year prison sentence.

45. Prior to issuing the detainer, ICE did not interview Plaintiff or reasonably investigate Plaintiff's status in order to establish probable cause to instruct for his arrest or continued detention pursuant to an immigration detainer. Even DHS's incomplete electronic records, on their face, showed that Plaintiff would have derived U.S. citizenship through his adoptive parents in February 2001. Accordingly, DHS had more than sufficient probative evidence in its possession to trigger the Morton Memo's mandate not to issue an immigration detainer.

46. ICE's failure to cancel the immigration detainer and otherwise comply with the Morton memo after Plaintiff presented a copy of his U.S. passport to an ICE officer at Stateville in December 2010 was unreasonable.

47. As a result of ICE's issuance of an immigration detainer absent probable cause, Plaintiff was unlawfully detained for approximately 70 days in a prison facility and delayed entry into boot camp. Plaintiff was often locked in a cell for 19 hours a day and subjected to strip

11

searches. Plaintiff would have been held for longer than 70 days but for efforts made by his father and an attorney to get the detainer canceled.

48. Had DHS and ICE not engaged in such tortious conduct, Plaintiff would have been released on parole in mid-May 2011 and would not have suffered lost wages as well as emotional, physical and psychological pain.

### FIRST CLAIM FOR RELIEF
### Against DHS
(Privacy Act Violation, 5 U.S.C. §§ 552a(g)(1)(C) & (e)(5))

49. Plaintiff realleges paragraphs 1-48 as if set forth fully herein.

50. Under the Privacy Act DHS is required to maintain its records as to Plaintiff's immigration and citizenship status with "such accuracy, relevance, timeliness, and completeness" so as to "assure fairness in any determination" the Department makes in exercising its immigration enforcement authority in reliance on those records. *See* 5 U.S.C. §§ 552a(g)(1)(C) & (D), (e)(5).

51. Plaintiff acquired U.S. citizenship at the age of one. On March 6, 1989, DHS's predecessor agency, INS, issued Plaintiff a certificate of U.S. citizenship. Likewise, Plaintiff obtained a U.S. passport at an early age and has had a current passport to the present.

52. DHS's failure to maintain records showing that Plaintiff is a U.S. citizen violates the Department's legal obligations to maintain its records with such accuracy, relevance, timeliness, and completeness as required by 5 U.S.C. §§ 552a(g)(1)(C) & (e)(5).

53. DHS's failure to comply with its legal obligations under the Privacy Act caused Plaintiff an adverse effect. 5 U.S.C. § 552a(g)(1)(C).

54. DHS's failure to maintain its records with the requisite accuracy, relevance, timeliness, and completeness was intentional and willful within the meaning of 5 U.S.C. §

552a(g)(4) and in flagrant disregard of Plaintiff's rights insofar as it failed to correct its records in over 20 years to reflect Plaintiff's U.S. citizenship despite being aware on several occasions that its records were inaccurate and that Plaintiff is a U.S. citizen.

55. As a proximate result of DHS's violations of Plaintiff's rights under the Privacy Act, Plaintiff had a wrongful immigration detainer lodged against him, which resulted in him serving approximately 70 days in prison. Due to DHS's unlawful conduct, Plaintiff suffered lost wages and other pecuniary and economic harm. 5 U.S.C. § 552a(g)(4)(A).

## SECOND CLAIM FOR RELIEF
**Against the United States of America**
(FTCA Claim of False Imprisonment)

56. Plaintiff realleges paragraphs 1-55 as if set forth fully herein.

57. This claim is brought pursuant to 18 U.S.C. §§ 2671 *et seq.*

58. DHS and ICE are responsible for the acts of their agents, officers, servants, and employees under the doctrine of respondeat superior.

59. DHS's and ICE's agents, officers, servants, and employees willfully and unlawfully restrained Plaintiff and deprived him of his liberty to move more freely.

60. DHS's and ICE's agents', officers', servants', and employees' actions in issuing a detainer and causing Plaintiff to be detained in a maximum (then medium) security prison facility were unreasonable under the circumstances because they failed to establish probable cause to believe that Plaintiff committed an immigration violation.

61. DHS's and ICE's agents', officers', servants', and employees' actions in continuing to maintain the immigration detainer even after Plaintiff met with an ICE officer at Stateville, explained that he was a U.S. citizen, and provided the officer with copies of his passport and social security card was also unreasonable.

62. As a proximate and reasonably foreseeable result of the actions by DHS's and ICE's agents, officers, servants, and employees, Plaintiff suffered damages including 70 days of imprisonment, pain and suffering, mental, emotional, and psychological distress, and lost wages. In addition, because he has twice been subjected to unlawful immigration detainers, Plaintiff continues to fear that any contact with law enforcement may lead to another unlawful immigration detainer.

**THIRD CLAIM FOR RELIEF**
**Against DHS**
(Privacy Act Violation, 5 U.S.C. §§ 552a(g)(1)(A))

63. Plaintiff realleges paragraphs 1-62 as if set forth fully herein.

64. Pursuant to 5 U.S.C. § 552a(d)(2) of the Privacy Act, Plaintiff was permitted to seek amendment of all electronic records that pertain to him in the custody or control of DHS so that they accurately and consistently reflect his U.S. citizenship.

65. In December 2012, Plaintiff sent a request to amend records to the DHS.

66. In January 2013, DHS sent a letter acknowledging receipt of Plaintiff's request. It failed to otherwise respond to Plaintiff's request.

67. Accordingly, DHS is in violation of 5 U.S.C. §§ 552a(d)(2) & (3).

68. Plaintiff asks this Court to order DHS to amend all electronic records in its custody or control that pertain to Plaintiff to accurately and consistently reflect his U.S. citizenship. 5 U.S.C. § 552a(g)(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Issue an order holding DHS liable for Plaintiff's damages resulting from violations of his rights under the Privacy Act, including but not limited to his lost wages other pecuniary and economic harm pursuant to 5 U.S.C. 552a(g)(4)(A);

b. Issue an order holding the United States liable for Plaintiff's damages resulting from DHS's and ICE's false imprisonment, including but not limited to, loss of liberty, emotional distress, lost wages, and attorneys' fees and costs;

c. Issue an order requiring DHS to amend all electronic databases within its custody or control that contain records pertaining to Plaintiff to accurately reflect his U.S. citizenship pursuant to 5 U.S.C. § 552a(g)(2)(A);

d. Grant Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. §§ 552a(g)(2)(B) & (4)(B), and other applicable law; and

e. Grant such other relief as this Court deems just and proper.

Respectfully submitted this 2nd day of May, 2014,

/s/ Kristen C. Klanow
Geoffrey A. Vance
Jocelyn D. Francoeur
Kristen C. Klanow
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Suite 4400
Chicago, Illinois 60606
Phone: (312) 372-2000

Mark Fleming
Charles Roth
National Immigrant Justice Center
208 S. LaSalle Street, Suite 1300
Chicago, Illinois 60604
Phone: (312) 660-1628

**ATTORNEYS FOR PLAINTIFF JAMES AZIZ MAKOWSKI**

## **CERTIFICATE OF SERVICE**

I, Kristen Klanow, certify that I caused a true and exact copy of the foregoing to be filed and emailed via the Court's ECF system to all counsel of record on May 2, 2014.

/s/ Kristen C. Klanow

DM_US 51723592-2.099731.0038